IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-CV-8 (MTT) |
| | ) |
| LINDA SIDENER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

In this declaratory judgment action, Plaintiff Owners Insurance Company moved for summary judgment arguing it has no duty to defend or indemnify its insured, contractor H&H Construction Group, Inc., because H&H gave notice of a claim to an independent agent, which, Owners argued, was not proper notice to Owners. Doc. 57.

Defendant State National Insurance Company, Inc. moved for summary judgment arguing it has no duty to defend or indemnify H&H as an indemnitee or additional insured under its policy with subcontractor Custom View Exteriors, LLC. Doc. 56. Because Custom View's work on the job site is excluded from coverage, State National does not have a duty to defend or indemnify H&H and State National's motion (Doc. 56) is **GRANTED**.

Finally, Custom View moved to dismiss for lack of subject matter jurisdiction arguing that no actual controversy exists between Owners and Custom View. Doc. 53. Because an actual controversy exists between Owners and Custom View, Custom View's motion (Doc. 52) is **DENIED**.

# I. BACKGROUND[1]

## A. The Underlying Lawsuit

In July 2019, Linda and John Sidener hired H&H to complete a construction project at their home in Milledgeville, Georgia.  Docs. 71-7 ¶ 3; 72-1 ¶ 3.  H&H hired Custom View as a subcontractor.  Docs. 71-7 ¶ 4; 72-1 ¶ 5.  Custom View's work on the Sideners' home "was limited to the removal of the existing roof and the installation of a new metal roof."[2]  Docs. 56-9 ¶ 5; 71-7 ¶ 5.

Before H&H and Custom View began work on the Sideners' home, the Sideners allegedly "made it abundantly clear to [H&H and Custom View] that all debris must be removed from the grounds each day" because Mr. Sidener "suffered from diabetes and any injury from left-behind debris could be medically devastating.  Docs. 1-1 at 6 ¶ 6; 72-1 ¶ 6; 74 ¶ 6.  On July 3, 2019, Mr. Sidener stepped on a nail left on the property.  Docs. 1-1 at 6 ¶ 7; 72-1 ¶ 7.  He died on February 10, 2020, allegedly from the injury.  Docs. 1-1 at 8 ¶ 11; 72-1 ¶ 10.  The Sideners retained legal counsel who sent a letter of representation to H&H on August 15, 2019.  Docs. 57-6 ¶ 14; 72-1 ¶ 14.  Mrs. Sidener, individually and as administrator of the estate of Mr. Sidener, filed a lawsuit against H&H and Custom View on October 22, 2020.  Doc. 1-1 at 5-9.

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] Owners argues this fact is disputed because Custom View had "additional" duties other than the roof removal and installation.  Docs. 71 at 19-20; 71-7 ¶ 5.  The only evidence Owners offers for this assertion is the Sideners' complaint, which alleges "Custom View was required to remove all debris from the property each day … owed a duty to warn of the dangerous object … a duty to inspect … [and] a duty of ordinary care to prevent hazardous conditions on the property."  Docs. 1-1 at 7 ¶ 9; 71-7 ¶ 5.  These "additional" duties, if they exist, arise from Custom View's roofing work, which undeniably "was limited to the removal of the existing roof and the installation of a new metal roof."  Docs. 56-9 ¶ 5; 71-7 ¶ 5; 56-5 ¶ 4.  Thus, Owners has not created a genuine dispute of material fact as to the scope of Custom View's work on the Sideners' home.

**B. Owners' Insurance Policy**

Owners issued a commercial general liability ("CGL") insurance policy to H&H for the period of August 18, 2018 to August 18, 2019. Docs. 57-6 ¶ 1; 72-1 ¶ 1.[3] The policy contains the standard provision requiring H&H to notify Owners of a claim as soon as practicable. Doc. 57-2 at 39. After receiving the Sideners' letter of representation, Tina Hosford, an H&H employee, notified Luke Ossanna, the independent insurance agent who assisted H&H with purchasing the Owners policy. Docs. 57-6 ¶ 16; 72-1 ¶ 16. Hosford contacted Ossanna "because he sold H&H the policy, his agency number was listed on the policy, and he told [Hosford], when [she] called him with the claim, that he would handle it[.]" Docs. 72-1 ¶ 19; 72-5 at 95:12-23.

**C. State National's Insurance Policy**

State National issued a CGL insurance policy to Custom View for the period of February 21, 2019 to February 21, 2020. Doc. 56-8 at 4. Relevant here, the policy contains two provisions that allow individuals or entities other than the named insured to qualify for coverage. First, the policy includes an "additional insured" endorsement which provides coverage for "any person or organization" that "agree[s] in writing in a contract or agreement that such person or organization be added as an additional insured on [the] policy." *Id*. at 59. Second, the policy contains a "supplementary payments" provision which provides coverage for "indemnitees" when "the insured has assumed the liability of the indemnitee in a contract or agreement[.]" *Id*. at 24-25.

---

[3] Owners attaches the renewed policy, with an effective policy period from August 14, 2019 to August 14, 2020, to its motion for summary judgment, rather than the policy in effect during Mr. Sidener's injury, with an effective policy period from August 18, 2018 to August 18, 2019. Doc. 57-2 at 15. The parties do not dispute the policy in effect during Mr. Sidener's injury has the same terms and conditions as the renewed policy. Docs. 57-6 ¶ 1; 72-1 ¶ 1.

-3-

H&H and Custom View entered into a subcontractor agreement, which required Custom View to indemnify H&H, maintain a CGL insurance policy, and name H&H as an additional insured on the policy.  Docs. 27-1 ¶ 6; 71-8 ¶¶ 2-3; 74 ¶¶ 2-3.  If this agreement was in effect when Mr. Sidener was injured in July 2019, Custom View would have been obligated to indemnify H&H and add H&H as an additional insured to the State National policy.  Doc. 27-1 ¶ 6.  But Owners and State National disagree whether the contract was executed before or after Mr. Sidener was injured in July 2019.  Docs. 56-9 ¶ 16; 71-7 ¶¶ 15-16.  Owners argues that the agreement was executed in March 2019 because the first page of the agreement states, "[t]his agreement is entered into as of the March 1st 2019, between H&H Construction Group Inc. ('the Company') and Josh Smith ('the Subcontractor')."  Docs. 27-1 at 2; 71 at 1-2.  State National, on the other hand, contends that the agreement was executed in October 2019 because the contract was not presented to Custom View or signed by the parties until October 10, 2019.  Docs. 56-1 at 11-14; 71-7 ¶¶ 15-16; 56-5 ¶¶ 11-14; 75-1.

But even if the contract predated Mr. Sidener's injury, State National argues that Custom View's roofing work is not covered because the policy contains a stand alone roofing exclusion, which excludes coverage for "'bodily injury' or 'property damage' arising out of … [s]tand alone roofing (other than roof decking and plywood installation work done as part of new construction, add-ons or remodels)[.]"  Docs. 56-1 at 17-19; 56-8 at 38-39.  Because Custom View's work was limited to the removal and installation of a roof, State National contends that Custom View, and thus H&H, is not covered by the policy.  Doc. 56-1 at 17-19.

## II. STANDARD

### A. Motion to Dismiss

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id*. at 1232-33 (internal quotation marks and citation omitted).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id.* at 1233.

"In a case of actual controversy … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[A] declaratory judgment may only be issued … [if], under the facts alleged, there [is] a substantial continuing controversy between parties having adverse legal interests."  *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (internal quotation marks and citation omitted).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking … declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Id.* (internal quotation marks and citation omitted).  "Injury in the past … does not support a finding of an Article III case or controversy when the only relief sought is a

declaratory judgment." *Id*. Whether a judiciable controversy exists "is determined on a case-by-case basis." *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991). An actual controversy must have existed at the time the complaint was filed. *Id*.

**B. Summary Judgment**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With regard to State National's motion,[4] "[w]hen the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial.' In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

---

[4] Under Georgia law, the insured has the burden to prove that it suffered a loss covered by the policy. *Rsrv. Life Ins. Co. v. Davis*, 224 Ga. 665, 667, 164 S.E.2d 132, 133 (1968); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:11 (3d ed. 2022). Therefore, Owners has the burden of proving that the subcontractor agreement renders H&H an additional insured or indemnitee under Custom View's policy with State National. However, the insurer bears the burden to prove a policy exclusion, exception, or other affirmative defense applies. *Rsrv. Life Ins. Co. v. Ayers*, 217 Ga. 206, 213, 121 S.E.2d 649, 654 (1961); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:12 (3d ed. 2022). Therefore, State National has the burden of proving that Custom View's roofing work is excluded by the stand alone roofing provision.

In determining whether a genuine dispute of material fact exists, the Court "must avoid weighing conflicting evidence or making credibility determinations." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Furthermore, "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56.

### III. DISCUSSION

### A. Custom View's Motion to Dismiss

Custom View argues that it was improperly joined as a defendant in Owners' declaratory judgment action. Doc. 53 at 3. Specifically, Custom View argues that because it does not claim Owners has a duty to defend or indemnify it in the Sideners' lawsuit, no actual controversy exists between Owners and Custom View. *Id*. at 6-7. But that is not the point. The issue is not whether Custom View wants coverage under H&H's policy with Owners, but whether the relief sought by Owners could affect any rights or obligations between and among H&H, Custom View, and their insurers.

Custom View, as a co-defendant with H&H in the Sideners' lawsuit, is a necessary party because it would be bound by the *stare decisis* effect of a judgment entered by the Court. *See Ranger Ins. Co. v. United Hous. of New Mexico, Inc.*, 488

F.2d 682 (5th Cir. 1974)[5]; *Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005); *Owners Ins. Co. v. Bryant*, 2006 WL 50488, at *3 (M.D. Ga. Jan. 9, 2006). As Owners points out, it is appropriate to join all defendants in the underlying tort lawsuit in an insurer's declaratory judgment action to ensure that all defendants are bound by any coverage decisions. Doc. 64 at 5-7. Moreover, the relief sought by Owners against State National necessarily implicates Custom View. *Id*. at 7-10. For example, if Owners successfully establishes that Custom View and H&H entered into the subcontractor agreement before Mr. Sidener's injury, Custom View would be obligated to indemnify H&H or take steps to add H&H as an additional insured. *See* Docs. 27 ¶¶ 40-79; 27-1 ¶ 6; 71 at 11-14.

In short, Custom View is an appropriate party if the Court is to resolve the rights and responsibilities of all parties. Accordingly, Custom View's motion to dismiss (Doc. 52) is **DENIED**.

**B. Owners' Motion for Summary Judgment**

In its motion for summary judgment, Owners argued that notice to Ossanna, an independent agent, was insufficient to satisfy the condition precedent to coverage requiring H&H to provide notice of a claim to Owners. Doc. 57-1 at 14-18. Owners relied on the principle that independent agents are not agents of the insurer, a principle which Owners proclaims it routinely invokes. *See, e.g.*, *Auto-Owners Ins. Co. v. Xytex Tissue Servs., LLC*, 421 F. Supp. 3d 1369 (S.D. Ga. 2019); *Jenkins v. CLJ Healthcare, LLC*, 481 F. Supp. 3d 1313 (S.D. Ga. 2020); *Auto-Owners Ins. Co. v. Cook Cnty. Land Ventures, LLC*, 2021 WL 3779245 (M.D. Ga. Aug. 25, 2021). On the surface, Owners'

---

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

motion seemed a slam dunk.  In the Court's experience, there likely is no point of insurance law more established than the rule that notice to a true independent agent is not notice to an insurer.  But, to everyone's surprise, the Sideners adduced evidence that Owners, unlike the typical insurer, expressly instructs its insureds to provide notice of claims to independent agents.  Docs. 72-7; 72-8.  At the October 13, 2022 hearing on its motion, Owners raised evidentiary and technical objections to this evidence.  However, the Court did not address the merits of Owners' motion.  Rather, the Court raised the question of whether Owners, to secure judgments establishing no coverage, had falsely represented that notice to independent agents was not notice to Owners.[6]

The Court raised that question because Owners' website[7] suggests that Owners' corporate policy and marketing strategy are built on a model that touts and promotes independent agents as the primary intermediary between Owners and its insureds.  For example, after posing the question on its website of "what's the best way to buy" insurance, Owners advised that independent rather than "captive" agents can better serve insureds' needs.  Doc. 80-2 at 1-2.  Having an independent agent "means you'll have confidence and peace of mind."  *Id*. at 3.  Because true independent agents can better serve insureds' needs, Owners is "committed to offering our insurance products

---

[6] The Court does not suggest that counsel here, or in any other case, knowingly made such misrepresentations.  Again, it is well established that notice to an independent agent is not notice to the insurer.  *See, e.g.*, *Eur. Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 173, 338 S.E.2d 702, 704 (1985); *Se. Express Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 224 Ga. App. 697, 700, 482 S.E.2d 433, 435 (1997).  There is no evidence or even a suggestion that counsel knew Owners may have instructed its insureds to give notice of claims to independent agents.

[7] Owners is a subsidiary of Auto-Owners Insurance Company and navigation through Owners' website often lands on pages referencing Auto-Owners.  In other words, the website makes no distinction between Owners or Auto-Owners; they are seamless.

solely through independent agents[.]" *Id*. at 2.  Thus, Owners directs insureds and potential insureds to independent agents who are truly independent rather than captive.

> With an independent agent, you will receive expert guidance from their experience.  **And, if you need to file a claim you will know *whom* to call.**  Not to mention, if you have questions about your policy you can call your agent.  This beats waiting on hold for what feels like forever just to get a simple question answered.

*Id*. at 3 (emphasis added).  On another webpage, in response to the question "How do I file an insurance claim?" insureds are told: "[t]he best way to file a claim with Auto-Owners is by contacting the local independent agency where you purchased your policy."  Doc. 80-1 at 2.[8]  Finally, Owners Insurance Identification Card for its automobile policies, according to one such card, instructs insureds to "[c]ontact your agent promptly to report the accident."  Attachment 1.

      To put it plainly, as the Court did at the hearing, the Court was concerned about the *possibility* that Owners was perpetrating a fraud on its insureds and the courts.  From one side of its mouth, it sang the virtues of independent agents, which no doubt motivates independent agents to push Owners' products, and told its insureds to notify those agents of claims.  But from the other side of its mouth, it told courts that notice to independent agents was not notice to Owners.  Given the circumstances, the Court thought it better not to address the merits of Owners' motion, but rather to allow Owners an opportunity to ponder whether it wished to stand by its position that its insureds cannot give effective notice of claims to independent agents.  After considering the matter, Owners informed the Court that it "will withdraw its prior position concerning

---

[8] The Court did not rule that the webpages upon which the Sideners rely (Docs. 72-7; 72-8) were admissible, and the Court made clear that the webpages identified at the hearing (Docs. 80-1; 80-2) were not part of the summary judgment record.  They are used solely to explain the basis for the Court's concerns.  The same is true for the attached Owners Insurance Identification Card.

notice to the independent agent and will seek leave to amend its pleading to dismiss that portion of its Complaint relating to the notice issue only, without prejudice." Doc. 81. The Court appreciates Owners' prompt reconsideration of its position. As noted at the hearing, Owners' motion for summary judgment (Doc. 57) is **DENIED without prejudice**.

## C. State National's Motion for Summary Judgment

In its motion for summary judgment, State National argues it has no duty to defend or indemnify H&H because (1) when Mr. Sidener was injured there was no written agreement requiring Custom View to indemnify H&H or add H&H as an additional insured[9] and (2) even if there was, the Sideners' claim arose out of Custom

---

[9] As noted, Owners and State National dispute whether the contract was executed before or after Mr. Sidener's injury. No one else does. Although the contract is dated March 1, 2019, the evidence establishes that it was signed by H&H and Custom View on October 10, 2019—approximately four months after Mr. Sidener was injured. Docs. 56-5 ¶¶ 11-13; 71-7 ¶ 16. Owners does not dispute that. Further, Owners does not dispute that Custom View was not presented with the subcontractor agreement until after Custom View completed the roofing work on the Sideners' home. Docs. 56-5 ¶ 14; 71-7 ¶ 15. Rather, Owners disputes that these facts establish the contract was executed after Mr. Sidener was injured because the contract states that the parties "entered into" the agreement on March 1, 2019. Docs. 71 at 11; 71-7 ¶¶ 15-16.

Specifically, Owners argues that the Court cannot consider H&H's request for admission, where H&H clearly concedes the agreement was signed after Mr. Sidener was injured, because it is improper parol evidence. Doc. 71 at 8-10. But the Court can consider parol evidence to determine when a contract was executed. *Georgia Cas. & Sur. Co. v. Almon*, 122 Ga. App. 42, 44, 176 S.E.2d 205, 206 (1970) ("The true date an instrument becomes effective may be shown to differ from the date shown in the instrument itself.") (quoting *Irwin v. Dailey*, 216 Ga. 630, 633, 118 S.E.2d 827, 829-30 (1961)). In any event, the Court need not look outside the four corners of the contract to determine the execution date. The agreement includes a DocuSign identification number under each of the parties' signatures and that identification number references a DocuSign certificate; therefore, the DocuSign certificate is incorporated by reference. Docs. 27-1 at 7; 75-1; *Brooks Peanut Co. v. Great S. Peanut, LLC*, 322 Ga. App. 801, 810, 746 S.E.2d 272, 280 (2013). The DocuSign certificate verifies that the agreement was not signed until October 10, 2019. Doc. 75-1; 1 *Williston on Contracts* § 1:19 (4th ed.) ("[A] contract must either be signed or fully performed before it can be considered executed.").

Notably, Owners' argument that State National waived this defense because it did not assert that H&H was not an additional insured or indemnitee in its July 16, 2021 coverage denial letter is without merit. Docs. 71 at 10; 71-6. The earliest this defense could have been discovered was at Hosford's deposition on August 23, 2021. Doc. 57-4 at 33-34. State National was not a party to the deposition and did not receive a copy of the deposition until March 12, 2022—months after the July 2021 denial letter was sent. Docs. 57-4 at 3-4; 75 at 6-7.

View's roofing work, which is excluded from coverage under the stand alone roofing provision.  Doc. 56-1 at 1-3.

"Insurance is a matter of contract and the parties are bound by the terms of the policy."  *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231 S.E.2d 245, 249-50 (1976).  Under Georgia law, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction."  O.C.G.A. § 13-2-1; *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998).  "Under the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed."  *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72, 599 S.E.2d 220, 221 (2004) (cleaned up).  "[I]f the policy exclusions are unambiguous[,] they must be given effect 'even if beneficial to the insurer and detrimental to the insured.'"  *Id.* at 372, 599 S.E.2d at 221-22 (quoting *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215, 496 S.E.2d 696, 699 (1998)).  "[A] word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one."  *N. Metro Directories Publ'g, LLC v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494, 631 S.E.2d 726, 729 (2006) (quoting *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 278 Ga. App. 1, 5, 627 S.E.2d 917, 921 (2006)).

"[T]he insurer is obligated to defend where ... the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance

---

Finally, if the Court needed further confirmation, counsel for H&H admitted at the October 13, 2022 hearing that the subcontractor agreement was signed after Custom View completed the work on the Sideners' home for the purpose of implicating Custom View's insurance coverage.  Putting aside the implications of that admission, the evidence before the Court is clear: The subcontractor agreement was not executed until October 2019—well after Mr. Sidener's injury.  That undisputed fact provides an alternative basis for granting State National's motion.

coverage." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997). "[I]t is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability insurance coverage is not afforded and for which the insurer need not provide a defense." *Id*. "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Id*. (citation and internal quotation marks omitted). "Though the duty to defend and the duty to indemnify are independent obligations and should generally be analyzed separately, the absence of a duty to defend is dispositive of the duty to indemnify." *Travelers Indem. Co. of Connecticut v. Peachstate Auto Ins. Agency, Inc.*, 357 F. Supp. 3d 1259, 1264 (N.D. Ga. 2019) (citations omitted).

If Custom View's roofing work on the Sideners' home was not covered by State National, then H&H cannot be an additional insured or indemnitee. Doc. 56-8 at 25, 59. Thus, whether H&H is covered by the policy turns on whether Custom View's work falls within the stand alone roofing exclusion. The exclusion states that the "insurance does not apply to 'bodily injury' or 'property damage' arising out of … [s]tand alone roofing (other than roof decking and plywood installation work done as part of new construction, add-ons or remodels)[.]" *Id*. at 38-39.

"When determining the meaning of the words used in a contract, the words will 'generally bear their usual and common meaning and the usual and common meaning of a word may be supplied by common dictionaries.'" *In re Est. of Boyd*, 340 Ga. App. 744, 747, 798 S.E.2d 330, 333 (2017) (quoting *Glob. Ship Sys., LLC v. Cont'l Cas. Co.*, 292 Ga. App. 214, 216, 663 S.E.2d 826, 829 (2008)); O.C.G.A. § 13-2-2(2). Merriam-

Webster defines "stand-alone" as "intended, designed, or able to be used or to function alone or separately: not connected to or requiring connection to something else in order to be used or to function" and "not being part of a larger work or series." *Stand-alone*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/stand-alone (last visited December 15, 2022). Thus, "stand alone roofing" refers to roofing work performed in isolation from other construction.

It is undisputed that Custom View's work on the Sideners' home "was limited to the removal of the existing roof and the installation of a new metal roof." Docs. 56-9 ¶ 5; 71-7 ¶ 5. H&H concedes that "[o]ther than work associated with removal and/or installation of the roof on the [p]roperty, Custom View did not perform any other work on the property." Doc. 56-5 ¶ 4. Further, there is no evidence that Custom View performed roof decking or plywood installation, the one exception to the exclusion for stand alone roofing work.[10] Doc. 56-8 at 39. Accordingly, Custom View's work is excluded by the "stand alone roofing" provision and does not fall within the "roof decking and plywood installation" exception to the exclusion.[11]

---

[10] "Decking" is defined as "material, as paper or fiberboard, treated in various ways as a waterproof covering for a deck or roof" or as "material of concrete, asbestos, steel, or the like, in the form of self-supporting flooring or roofing units laid between joists or rafters." *Decking*, Dictionary.com, https://www.dictionary.com/browse/decking (last visited December 15, 2022). And "plywood" is defined as "a structural material consisting of sheets of wood glued or cemented together[.]" *Plywood*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/plywood (last visited December 15, 2022). Using ordinary meaning as a guidepost, the text of the parenthetical following "stand alone roofing" indicates that the installation of plywood or similar waterproof covering as part of construction projects involving "new construction, add-ons or remodels" is roofing work that is covered by the policy. Custom View did not perform roof decking or plywood installation. *See* Docs. 56-5 ¶ 4; 56-9 ¶ 5.

[11] Notably, State National is not defending Custom View from the claims asserted by the Sideners in the underlying lawsuit. Doc. 56-1 at 14.

Owners argues that Custom View, and thus H&H, is covered by the policy because (1) the term "stand alone roofing" is ambiguous and (2) Custom View's roofing work was not the "but for" cause of Mr. Sidener's injury.  Doc. 71 at 18-20.

First, Owners has not offered a reasonable alternative meaning of the term "stand alone roofing" to illustrate that the term is ambiguous.  Owners simply asserts that the term "'stand alone roofing' … suggests that a roofing project taken on by Custom View might not be 'stand alone' because it is connected to the Property, thus a part of a larger work." *Id*. at 19.  Owners' alternative definition of "stand alone roofing" is at best, convoluted and, at worst, absurd.  The fact that a roof is connected to the house on which it sits does not mean that the removal and installation of a roof should be considered part of a larger construction project that is covered by the policy.  As State National points out, "[s]uch an interpretation is not reasonable as roofs are always connected to and part of a larger structure—otherwise they would sit on the ground or float in the air."  Doc. 75 at 9.  Owners' interpretation would render the policy exclusion for "stand alone roofing" meaningless because no roofing work could ever be considered "stand alone."  *See Sheridan v. Crown Cap. Corp.*, 251 Ga. App. 314, 316, 554 S.E.2d 296, 299 (2001) ("The construction of the contract should give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect.") (cleaned up).

Second, Owners contends that Custom View's roofing work is not excluded by the policy because Mr. Sidener's injury did not "arise out of" Custom View's roofing work.  Doc. 71 at 19.  The policy exclusion applies only to "'bodily injury' or 'property

damage' *arising out of* … [s]tand alone roofing[.]"  Doc. 56-8 at 38-39 (emphasis added).  The phrase "arising out of" requires the Court to apply a but for causation standard.  Doc. 71 at 19 (citing *Sauls v. Allstate Prop. & Cas. Ins. Co.*, 326 Ga. App. 821, 824, 757 S.E.2d 455, 458 (2014)).  Owners argues that Custom View's roofing work was not "the 'but for' cause of Mr. Sidener's injury" because Custom View's "additional" duties, rather than Custom View's roofing work, were the cause of Mr. Sidener's injury.  *Id*. at 19-20.  To begin, Owners' definition of but for cause is incorrect.  The traditional tort law standard of cause-in-fact, which Owners' asserts is the applicable standard, is "a" but for cause, not "the" but for cause.  To put it plainly, "the but for cause" is an oxymoron.  By definition, but for cause implies multiple causes.  *See Bostock v. Clayton Cnty., Ga.*, ___ U.S. ___, 140 S. Ct. 1731, 1739 (2020).  As a result, the presence of other factual causes does not preclude the conclusion that Custom View's roofing work was a but for cause of Mr. Sidener's injury.  If Mr. Sidener stepped on a Custom View nail, that nail was there because Custom View was on site to do stand alone roofing.  In that event, Custom View's stand alone roofing work was a but for cause of Mr. Sidener's injury.

Furthermore, as discussed above, Owners' contention that Custom View's roofing work was not limited to the removal and installation of a roof is without merit.  In short, Custom View was on the job site only to replace and install a roof; thus, if Custom View somehow played a role in Mr. Sidener's injury and death, that role arose out of its stand alone roofing work.  The fact that Custom View had to clean up after itself changes nothing—Custom View was on the job site to perform stand alone roofing work.

In sum, Custom View's work on the Sideners' home was limited to removing and installing a roof. This constitutes stand alone roofing, which is excluded from the policy. As a result, even if H&H was an additional insured or indemnitee, H&H is not covered by the terms of the policy.

## IV. CONCLUSION

Owners' motion (Doc. 57) has been **DENIED without prejudice**; State National's motion (Doc. 56) is **GRANTED**; and Custom View's motion (Doc. 52) is **DENIED**.

**SO ORDERED**, this 15th day of December, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT